## McCULLEN v. McCULLEN. (No. 5863.)

(Supreme Court, Appellate Division, First Department. May 29, 1914.)

1. MARRIAGE (§ 54*)—VOID MARRIAGE—EFFECT.
　　　A marriage which is absolutely void under Domestic Relations Law (Consol. Laws, c. 14) § 6, forbidding marriage to one who has a spouse by a former marriage living, is void without any decree of court, though the court may enter a formal decree declaring it void.

　　　[Ed. Note.—For other cases, see Marriage, Cent. Dig. §§ 93–103, 105, 106, 109; Dec. Dig. § 54.*]

2. MARRIAGE (§ 54*)—VOIDABLE MARRIAGE—VALIDITY.
　　　A marriage induced by fraud is, under Domestic Relations Law (Consol. Laws, c. 14) § 7, void only from the date it is annulled by judgment of court, and until that time it is valid.

　　　[Ed. Note.—For other cases, see Marriage, Cent. Dig. §§ 93–103, 105, 106, 109; Dec. Dig. § 54.*]

3. MARRIAGE (§ 54*)—VOIDABLE MARRIAGE—VALIDITY.
　　　Code Civ. Proc. § 1754, providing that a final judgment annulling a marriage is conclusive evidence of the invalidity of the marriage in every

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

court, in any action, is merely a declaration of the effect of a judgment of annulment as evidence, and does not declare a rule of law as to whether a marriage shall be deemed invalid from the date of celebration, or from the date of the decree; that being left to regulation by the Domestic Relations Law.

[Ed. Note.—For other cases, see Marriage, Cent. Dig. §§ 93–103, 105, 106, 109; Dec. Dig. § 54.*]

4. MARRIAGE (§ 11*) — VOIDABLE MARRIAGE — SUBSEQUENT MARRIAGE — VALIDITY.

Where a marriage, induced by the fraud of the husband, was not annulled by a court, a subsequent marriage of the wife to a third person was absolutely void.

[Ed. Note.—For other cases, see Marriage, Cent. Dig. § 30; Dec. Dig. § 11.*]

5. MARRIAGE (§ 37*)—INVALIDITY—RATIFICATION.

A marriage, absolutely void because the wife had, at the time of the celebration thereof, a husband living, cannot be validated by ratification after the annulment of the former marriage, and under Domestic Relations Law (Consol. Laws, c. 14) §§ 11, 12, a new marriage between the wife and the second husband may not be inferred merely because they cohabited as husband and wife after the annulment.

[Ed. Note.—For other cases, see Marriage, Cent. Dig. § 108; Dec. Dig. § 37.*]

6. MARRIAGE (§ 60*)—ANNULMENT—GROUNDS.

A husband, suing to annul the marriage on the ground that the wife at the time of the celebration thereof had a husband living, need not negative by pleading or proof the exceptions in Domestic Relations Law (Consol. Laws, c. 14) § 6, and need only plead and prove the former marriage, and that the husband of the former marriage was living at the time of the celebration of the second marriage, and that the former marriage had not been annulled.

[Ed. Note.—For other cases, see Marriage, Cent. Dig. §§ 125–128, 130–135; Dec. Dig. § 60.*]

Appeal from Special Term, New York County.

Action by Early B. McCullen against Anna F. McCullen. From a judgment of dismissal, plaintiff appeals. Reversed, and decision modified.

Argued before INGRAHAM, P. J., and LAUGHLIN, CLARKE, SCOTT, and DOWLING, JJ.

Dix W. Noel, of New York City, for appellant.

LAUGHLIN, J. This action was brought to have a marriage, formally celebrated between the parties on the 28th day of February, 1907, annulled on the ground that the defendant at the time of the celebration thereof had a husband living. On the 22d day of November, 1902, the defendant was married in due form to one Fickbohn in the city and county of New York, and the contract of marriage duly signed, witnessed, and acknowledged, was duly filed in the office of the clerk of the city and county of New York within six months thereafter, as required by section 6 of the Domestic Relations Law in force at that time. Section 6, c. 272, Laws 1896, as amended. After the marriage between the parties thereto, and on the 31st day of August, 1908, in an action in the Supreme Court of this state, the defendant's former

marriage was duly annulled by judicial decree, on the ground that the defendant herein was induced, by fraud perpetrated upon her by said Fickbohn, to enter into said marriage contract. The learned trial court in this action proceeded upon the theory that the final decree in the former annulment action, although made and entered after the marriage between the plaintiff and defendant, was a judicial determination that the defendant's former marriage was void at its inception, and was never binding upon her, and that she therefore was competent to marry the plaintiff.

[1, 2] If the annulment of the defendant's former marriage had been upon the ground that it was absolutely *void,* and not merely *voidable,* the decree could be sustained, for where a marriage is void, although the Legislature has authorized the court in the interests of the public to enter a formal decree declaring it void, it is void without any decree of the court, and forms no obstacle to the right of either party to marry again. Sections 6 and 7, Domestic Relations Law; Consolidated Laws, c. 14; Laws of 1909, c. 19; Stein v. Dunne, 119 App. Div. 1, 103 N. Y. Supp. 894, affirmed 190 N. Y. 524, 83 N. E. 1132; Price v. Price, 124 N. Y. 589, 27 N. E. 383, 12 L. R. A. 359, and Pettit v. Pettit, 105 App. Div. 312, 93 N. Y. Supp. 1001. There is, however, a clear distinction made by our statutory law, and by the decisions thereunder, between the *void* and *voidable* marriages. A marriage is absolutely void under our statute only when one of the parties has a husband or wife by a former marriage living, and in circumstances which it is not material to consider on this appeal. Section 6, Domestic Relations Law. There is no evidence that the defendant had a husband living at the time she married Fickbohn. The only question with respect to her former marriage appears to have been with reference to the representations made by her former husband to induce her to enter into it, and that is the sole ground upon which it was annulled. Our statutes authorize an action for the annulment of a marriage on the ground of fraud; but such marriages are classed by our statute as *voidable,* and it is expressly declared that they are void *only* from the time their nullity is declared by a court of competent jurisdiction. Section 7, Domestic Relations Law.

[3] True, it is provided in section 1754 of the Code of Civil Procedure that a final judgment, annulling a marriage rendered during the life of both parties, "is conclusive evidence of the invalidity of the marriage, in every court, of record or not of record, in any action or special proceeding, civil or criminal," but that is merely a rule of evidence with respect to the effect of the decree as evidence. It was not intended thereby to declare a rule of law with respect to whether the marriage should be deemed invalid from the date of its celebration or from the date of the decree, and those matters were left to be regulated by other statutory provisions, as they are regulated by the provisions of the Domestic Relations Law to which reference has been made, whereby it appears that where the marriage was absolutely void, there has been no attempt on the part of the Legislature to validate it for any period, and the decree of the court merely formally declares in the interests of society what the law had prescribed in advance, namely, that

the marriage was absolutely void; whereas, in the case of a voidable marriage, the Legislature deemed it wise, likewise in the interests of society, to recognize its validity until declared void by judicial decree.

[4, 5] It follows, therefore, that at the time of the celebration of the marriage between the parties hereto, the defendant had a husband living, and her former marriage was in full force and effect. She therefore could not then lawfully marry the plaintiff or another. The marriage between the plaintiff and the defendant was therefore absolutely void, and it could not be validated by ratification after defendant's former marriage was annulled, although the parties could then have lawfully married. Since by statute it is now required that a marriage shall be formally solemnized, or the contract shall be in writing (sections 11 and 12 of Domestic Relations Law, being chapter 14 of the Consolidated Laws), no new marriage could be inferred even if, as one of them testified, the parties cohabited as husband and wife after the rendition of the decree of annulment. See Pettit v. Pettit, supra.

[6] There was no appearance in this action for the defendant. The plaintiff merely alleged the former marriage between the defendant and Fickbohn; that Fickbohn was living when the marriage between the plaintiff and defendant was celebrated; and that the marriage between the defendant and Fickbohn had not been annulled or dissolved. All of these facts were sufficiently proved. I am of opinion that it was not necessary for the plaintiff to negative by allegation or proof the exceptions or provisos contained in section 6 of the Domestic Relations Law which would render inapplicable to the marriage between the defendant and Fickbohn the statutory provision declaring the marriage absolutely void where one of the contracting parties had a husband or wife by a former marriage living. See Stein v. Dunne, supra. The findings made by the trial court are sufficient to entitle the plaintiff to an interlocutory judgment for the annulment of the marriage.

It follows that the judgment should be reversed, and the decision modified by striking therefrom the conclusion of law and substituting therefor a conclusion to the effect that the plaintiff is entitled to an interlocutory judgment for the annulment of the marriage in accordance with the provisions of section 1774 of the Code of Civil Procedure, and directing the entry thereof. All concur.